**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VIRGINIA KURSCHINSKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-87 Erie |
| | ) | |
| MEADVILLE FORGING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

McLAUGHLIN, SEAN J., J.

 Presently pending before the Court is Defendant, Meadville Forging Company's Motion for Summary Judgment.

## I. FACTS

 Plaintiff, Virginia Kurschinske, was hired by Defendant on January 5, 2004. Def. Ex. A, Plaintiff's Dep. p. 16. At all relevant times during her employment, Gary Klink was Defendant's plant manager. Plaintiff initially worked the first shift under the direction of Mike Delycure and Don Moyer. Id. at p. 46. In May 2004, Plaintiff was switched to the second shift, and her supervisors were Mark Lewis and Scott Windsor, who were designated as "group leaders." Id. at p. 48. According to Plaintiff, pornographic materials surfaced on the second shift and she was subjected to some workplace misconduct, but was not offended by it. Id. at pp. 73; 107.

 Plaintiff was subsequently switched to the third shift in September 2004, and testified, as set forth in more detail below, that the display of pornographic materials became more "hard core" and her male co-workers' offensive conduct escalated. Id. at pp. 45; 82; 94-95. According to Plaintiff, she repeatedly reported the alleged misconduct to her supervisors and/or group leaders to no avail. Id. at pp. 93; 98; 118; 132-133; 141. Plaintiff also complained to Klink, who subsequently held a meeting in December 2004 and informed all shifts that pornography was no longer permitted. Id. at p. 120; Def. Ex. B, Klink Dep. p. 9. Plaintiff claims that notwithstanding Klink's directive, her male co-workers continued to display pornography and she became the target of retaliatory conduct, which she also reported to management. Def. Ex. A, Pl. Dep. pp. 124-128; 137; 225; Def. Ex. D, p. 10.

 On January 5, 2005, Plaintiff received a two-day suspension without pay for causing a

disruption during her shift with another female co-worker which had occurred in November 2004. Def. Ex. A, Plaintiff's Dep. p. 151; Def. Ex. C. According to Plaintiff, this suspension was the "straw that broke the camel's back" and she ultimately resigned because she "could not work under those conditions." Def. Ex. A, Plaintiff's Dep. Pp. 202; 204; 207.

Plaintiff subsequently brought the instant action against Defendant, alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000c et seq. and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. Specifically, Plaintiff claims she was subjected to a hostile work environment and was retaliated against as a result of her complaints. She also seeks damages based upon a claim of constructive discharge. Defendant has moved for summary judgment with respect to all claims. For the following reasons, the motion will be denied.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

We direct our attention first to Plaintiff's hostile environment claim. To establish a successful claim for hostile work environment discrimination based upon sex under Title VII and the PHRA, an employee must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability. Jensen v. Potter, 435

F.3d 444, 449 n.3 (3rd Cir. 2006) implied overruling on other grounds recognized by Moore v. City of Philadelphia, 461 F.3d 331 (3rd Cir. 2006); Weston v. Pennsylvania, 251 F.3d 420, 426 (3rd Cir. 2001). In determining whether a work environment is hostile, the totality of the circumstances must be considered, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

Defendant argues that Plaintiff's hostile environment claim fails because there is insufficient record evidence to create a triable issue of fact as to the severity or pervasiveness of the conduct. Further, Defendant argues that there is no evidence that Plaintiff was detrimentally affected by the allegedly offensive conduct. Finally, Defendant contends that Plaintiff cannot establish *respondeat superior* liability because of the effectiveness of its remedial action. At this point, a brief recitation of the evidence marshaled by Plaintiff in support of her claims is appropriate.

Plaintiff testified at deposition that after she was switched to the second shift in May 2004, she observed graphic pornography at her group leader's work station while they were alone at the plant. Def. Ex. A, Plaintiff's Dep. p. 74; 77. Shortly after switching to the third shift in September 2004, she observed hard core pornography at the plant manager's son's work station. Id. at pp. 94-95. In late September 2004, Plaintiff testified that graphic pornography was left on the windshield of her car. Id. at p. 140. In October 2004, male co-workers flipped through pornographic magazines in her presence and on one occasion made comments such as "look at those knockers" or "nice beaver." Id. at p. 87. A co-worker also shoved a pornographic magazine in close proximity to her face and stated "hey bitch, don't you wish you looked like that huh?" Id. at p. 108. In September or October 2004, male co-workers taped pornographic pictures on their workstation doors, as well as her machine while she was at lunch. Id. at p. 96; 108-109. Plaintiff heard a male co-worker, while looking at a pornographic magazine, state to another female co-worker "hey, you're in this magazine."

On at least twelve occasions, Plaintiff claims that male co-workers engaged in simulated sexual acts in front of her. Id. at pp. 101-103. On two or three occasions, a male co-worker grabbed her buttocks. Id. at p. 109. Plaintiff further testified that on one occasion, a male co-worker stated "here comes that bitch now," backed up and dropped his pants, exposing himself

to her upon losing his balance.  Id. at pp. 115-116.  On another occasion, Plaintiff brought in a
picture of her daughter, and her male co-workers commented on what they wanted to do with her
daughter, inquiring if she had any "nudies" of her daughter.  Def. Ex. G, pp. 12-13.  Male co-
workers also passed gas into the cooling fans every night, as well as during meetings, and on one
occasion, while Plaintiff was bent over oiling her machine, a male co-worker walked by and
pushed her head down as he passed gas.  Def. Ex. A, Plaintiff's Dep. pp. 130-131; 133-135.
Plaintiff also testified that her machines suffered damage "off and on" during the months of
September, October and November.  Id. at p. 213.

  In its Brief, Defendant addresses many of the above incidents individually and argues that
no individual incident is sufficiently egregious to support a hostile environment claim.  In
determining, however, whether a viable hostile environment claim exists, we are cautioned by
the Third Circuit that it is necessary to consider all of the alleged incidents in their totality.
Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3rd Cir. 1990).  We conclude that when
viewed in their totality, a jury could reasonably find that the incidents were sufficiently severe
and pervasive to support the hostile environment claim.  See, e.g., Andrews, 895 F.2d at  1486
(evidence to be considered in determining whether work environment was hostile includes name
calling, pornography, displaying sexual objects on desk, disappearance of plaintiffs' case files
and work product, anonymous phone calls and destruction of other property); Zelinski v.
Pennsylvania State Police, 108 Fed. Appx. 700, 705 (3rd Cir. 2004) (considering all incidents
together over short length of time showed incidents were more than isolated and unrelated);
Taylor v. Cameron Coca-Cola Bottling Co., Inc., 1997 WL 719106 *5-6 (W.D.Pa. 1997)
(denying summary judgment where conduct occurred over several months and consisted of
comments about the size of plaintiff's breasts, asking plaintiff and other females about their
breast size, asking plaintiff about her sex life with her husband, telling dirty jokes, showing
workers a calendar which revealed the naked upper body of a woman and daily comments about
the legs of female employees);  Rufo v. Metropolitan Life Ins. Co., 1997 WL 732859 *3 (E.D.Pa.
1997) (denying summary judgment where conduct consisted of unwelcome physical contact from
co-worker, who also stared at female employees breasts while engaging in conversation, touched
and pulled on his genitals while in conversation, and discussed matters of a sexual nature);
Harley v. McCoach, 928 F. Supp. 533, 539 (E.D.Pa. 1996) (summary judgment precluded where
plaintiff adduced evidence that male workers openly displayed pornographic magazines, wore

4

tee-shirts depicting sexually explicit messages and simulated sexual acts in the workplace).

We also find that Plaintiff has raised a triable issue of fact as to whether the specified conduct was detrimental to her. Plaintiff testified that she found the conduct "offensive," "alarming," "disgusting" and "crude." Def. Ex. A, Plaintiff's Dep. Pp. 108-109. "[I]f the [harassment] victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris, 510 U.S. at 21-22. "Title VII comes into play before harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Id.

Finally, we reject Defendant's argument that Plaintiff cannot establish *respondeat superior* liability because it took reasonable remedial action as a matter of law once Plaintiff's complaints were known. An employer will be liable for the harassing conduct of the plaintiff's co-worker if the employer "was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment." Boneberger v. Plymouth Township, 132, F.3d 20, 26 (3rd Cir. 1997). An employer is negligent if it "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." Jensen, 435 F.3d at 453. A remedial action that stops the harassment is adequate as a matter of law. Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3rd Cir. 1997). Even if the remedial action does not stop the alleged harassment, it is "adequate" if it is "reasonably calculated" to end the harassment. Id.

Here, Plaintiff testified that she repeatedly complained to her group leader and/or supervisor about the ongoing harassment. Def. Ex. A, Plaintiff's Dep. pp. 81; 93; 98; 118; 132-133; 141-142. She also testified that she complained directly to the Plant Manager. Despite these complaints, Plaintiff claimed that the harassment continued and she was advised to "ignore it." Def. Ex. A, Plaintiff's Dep. p. 118. We find that there is a genuine issue of material fact as to the efficacy of Defendant's remedial action.

Defendant further claims it is entitled to summary judgment on Plaintiff's constructive discharge claim. As stated in Pennsylvania State Police v. Suders, 542 U.S. 129 (2004):

> For an atmosphere of sexual harassment or hostility to be
> actionable, we reiterate, see *supra*, at 2347, the offending behavior

"must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor*, 477 U.S., at 67, 106 S.Ct. 2399 (internal quotation marks and brackets omitted). A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign. See, *e.g., Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1160 (C.A.8 1999) ("[A]lthough there may be evidence from which a jury could find sexual harassment, ... the facts alleged [for constructive discharge must be] ... so intolerable that a reasonable person would be forced to quit."); *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1015 (C.A.7 1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.").

Suders, 542 U.S. at 134; see also Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3rd Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile environment.") (quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir.), aff'd. 511 U.S. 244 (1992)). The test is objective in light of the totality of the circumstances. Suders, 542 U.S. at 134.

Defendant contends that the record conclusively establishes that Plaintiff resigned solely because of embarrassment over a two day suspension for a workplace incident rather than the pattern of sexually offensive conduct which forms the basis for her hostile environment claim. In this regard, we note that the record reveals the following: Plaintiff was summoned to Klink's office at the end of her shift on January 5, 2005 and was given a slip of paper informing her of a two day suspension for causing a disruption at work in November 2004. Def. Ex. A, Plaintiff's Dep. p. 176-178; 182. It was a very brief meeting, lasting approximately two to three minutes, and after the meeting Plaintiff stopped by Moyer's office and requested that he speak to Klink on her behalf, since she felt he would corroborate her version of the November incident for which she received the suspension. Id. at pp. 181; 186-187. Plaintiff testified that she was "choked up and hurt" because the individuals who allowed the "chaos" to occur were judging her and giving her "stiff retaliation" because she complained. Id. at p. 189. She allegedly told Moyer he was just going to "open up a can of worms" since her male co-workers thought they could get away with everything because they had been sneaking porn into the plant and nothing had happened to them. Id. at p. 189. She further stated to Moyer that "[t]hey are going to have a field day with this," referring to her suspension. Id.

On her way out of the plant, Plaintiff saw Klink and asked if she could take vacation,

which he denied. <u>Id</u>. at p. 191.  She testified that her purpose in asking for vacation was so that her male co-workers would not hear about her suspension, since she did not want them to feel they could get away with "everything" and see what happened to her when she complained. <u>Id</u>. at p. 191. Plaintiff testified that she then went to her car, where she discovered pornography on the windshield and that the sensor had been damaged. <u>Id</u>. at p. 190; 192.

After Plaintiff arrived home, she had a telephone conversation with Moyer, who she claims felt her suspension was "wrong" because he knew of "all the hostilities and what the men had done and what they were capable of" and he informed her he was still in the process of trying to speak with Klink on her behalf. <u>Id</u>. at p. 194-195.  Plaintiff also telephoned different government agencies to see if they could intervene and help get "something worked out" since she felt the men were "going to really, really do something to me now." <u>Id</u>. at pp. 193; 195.

Plaintiff subsequently spoke with Klink on the telephone on January 7, 2005. <u>Id</u>. at 202. According to Plaintiff, she told him about the pornography on her windshield and her car damage, and informed him that she could not work under those kinds of conditions. <u>Id</u>. at p. 203. She stated that the guys would "have a field day with" her, since they were able to engage in harassing behavior and incur no discipline, yet the more she complained the worse the situation became. <u>Id</u>. at pp. 203-205.  Finally, Plaintiff testified that her suspension was the "straw that broke the camel's back" and she "just couldn't take any more." <u>Id</u>. at p. 207.

We are of the opinion that there is a triable issue of fact as to whether a "reasonable person" in the Plaintiff's position would have been forced to quit and further, whether the allegedly sexually hostile environment was a substantial factor in her decision to resign. <u>See e.g.</u>, <u>Fuller v. Global Custom Decorating</u>, 2007 WL 44507 *23 (W.D.Pa. 2007) (factfinder could determine that a reasonable person would remove herself from such an employment situation); <u>Miklos v. Princip</u>, 2006 WL 1438159 *14 (W.D.Pa. 2006) (fact issue as to whether plaintiff's working conditions were so intolerable that a reasonable person would have felt compelled to resign).

Finally, we turn to Plaintiff's retaliation claim.  To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: "(1) she engaged in activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between her participation in the protected activity and the adverse employment action." <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-342 (3rd Cir. 2006)

(quoting <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3rd Cir. 1995)).  "Protected activity" includes filing charges of discrimination or complaints about discriminatory employment practices. <u>Abramson v. William Paterson Coll. of N.J.</u>, 260 F.3d 265, 287-88 (3rd Cir. 2001).  As to the second element, the United States Supreme Court recently explained that a plaintiff must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, __ U.S. __, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  To establish the third element, a plaintiff must show a "causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might dissuade a reasonable worker from making or supporting a charge of discrimination."  <u>Moore</u>, 461 F.3d at 340.  If a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  <u>Delli Santi v. CNA Ins. Companies</u>, 88 F.3d 192, 199 (3rd Cir. 1996).  If the defendant satisfies this requirement, the plaintiff must then show that the reasons proffered were only a pretext for retaliation.  <u>Id</u>.

Here, Plaintiff claims that following the complaints she made concerning the previously described conduct of her male co-workers, she was threatened by her group leader, Mark Lewis, and acting assistant supervisor, Doug Hunter, that if she did not stop complaining that she would "be the one going out the door."  Def. Ex. A, Plaintiff's Dep. pp. 162; 183; Def. Ex. D p. 5.  She also claims that on the day she was suspended her vehicle had been tampered with and/or vandalized in the company parking lot.  Def. Ex. A, Plaintiff's Dep. p. 146.

Based upon the above, we find that Plaintiff has raised a triable issue of fact relative to her claim of retaliation sufficient to defeat Defendants motion for summary judgment.

### IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VIRGINIA KURSCHINSKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       Civil Action No. 06-87 Erie |
| | ) |
| MEADVILLE FORGING COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

AND NOW, this 21st day of June, 2007, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant, Meadville Forging Company's Motion for Summary Judgment  [Doc. No. 13] is DENIED.




s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.

9